UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| GERALD I. KRAFSUR, | ) | |
| --- | --- | --- |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 2:11-CV-170 |
| | ) | |
| MICHAEL J. DAVENPORT, individually | ) | |
| and in his official capacity, and the | ) | |
| SOCIAL SECURITY ADMINISTRATION, | ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION AND ORDER**

This matter is before the Court on defendants' motion to dismiss plaintiff's Second Amended and Supplemental Complaint, [Doc. 27]. Plaintiff has responded in opposition, [Doc. 29], defendants have replied, [Doc. 33], and the matter is now ripe for disposition. For the reasons which follow, the motion to dismiss will be GRANTED.

### **I. Procedural Background**

On June 13, 2011, the plaintiff, an administrative law judge ("ALJ") with the Social Security Administration ("SSA") filed his initial complaint, [Doc. 1]. All defendants moved to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), [Doc. 4]. On October 4, 2011, plaintiff filed an Amended and Supplemental Complaint, [Doc. 13], and defendants again moved to dismiss, [Doc. 16]. After full briefing on the motion to dismiss, plaintiff was granted leave by the Magistrate Judge to file a second amended complaint, [Doc. 25], and the Second Amended and Supplemental Complaint was filed on June 26, 2012, [Doc. 26].

In the pending motion to dismiss, defendants argue the complaint must be dismissed because (1) the plaintiff's claims are constitutional tort claims, known as "*Bivens* claims," for which federal agencies and federal officials have not waived sovereign immunity and the Administrative

Procedures Act and the Tucker Act are not applicable to the plaintiff's "*Bivens* claims"; (2) the plaintiff's claims, including the plaintiff's claims against the defendant Davenport in his individual capacity, allege prohibited personnel actions which are preempted by the comprehensive statutory scheme of the Civil Service Reform Act ("CSRA"); and (3) the plaintiff's tort claim for intentional infliction of emotional distress against defendant Davenport in his individual capacity fails because it is also preempted by the CSRA and because the plaintiff has failed to exhaust his administrative remedies under the Federal Tort Claims Act.

**II. Facts**

The following facts, taken from the Second Amended and Supplemental Complaint, are accepted as true:

The plaintiff, a licensed attorney, is an ALJ for the SSA assigned to SSA's Region Four field office in Kingsport, Tennessee. He hears and decides claims for Social Security disability benefits and conducts hearings in Kingsport, Morristown, Tennessee and Asheville, North Carolina. Krafsur also decides claims for attorney's fees by successful claimants. Defendant Michael J. Davenport ("Davenport") is the Hearing Office Chief ALJ ("HOCALJ") for the Kingsport field office.

Krafsur "has been routinely conservative in awarding attorney's fees in response to fee petitions" from claimant's attorneys who have no fee agreement with their clients. The fees are paid by the claimants and deducted from their disability awards. In September, 2010, Davenport began pressuring Krafsur to make higher attorney's fee awards. Krafsur objected to the "illegal" directive from Davenport "on the grounds that it interfered with his judicial independence." Davenport then began to retaliate against Krafsur to punish him for refusing to make higher attorney's fee awards.

Since 1991, Krafsur had established a pattern of working several hours on some Saturdays

and after normal office hours during the week to complete his assigned cases. He was not paid extra, and did not request extra pay, for Saturday and after-hours work. Davenport, in retaliation for Krafsur's refusal to grant higher attorney's fees, directed Krafsur to stop his Saturday and after-hours work, causing Krafsur to "suffer mental and physical distress," making it more difficult for him to perform his job duties.

In further retaliation, Davenport began to deny Krafsur's request for personal "use or lose" leave, unless he presented the leave request to Davenport in person, contrary to the prior office practice of placing such request for leave in the timekeeper's interoffice box. Other ALJs were allowed to continue the prior practice. Davenport declared Krafsur "AWOL" for approximately 26 hours of requested leave which had not been presented to him personally and accused Krafsur of being "insubordinate." As a result of the "unapproved" leave, money was withheld from Krafsur's paycheck by Davenport and Krafsur's available "use or lose" leave hours were reduced to match the reduction in pay, depriving Krafsur of both pay and leave hours.

In January, 2011, Davenport retaliatorily cancelled hearings Krafsur had scheduled in Asheville, North Carolina without Krafsur's agreement. Krafsur was notified of the cancellations by Davenport by telephone before he drove to Asheville. Krafsur objected that Davenport did not have the authority to cancel hearings and Davenport "announced" he had done so because of bad weather. Krafsur was embarrassed by the cancellations.

Krafsur notified the Office of Special Counsel ("OSC"), Davenport and SSA regional managers by his January 6, 2011 letter of his objection to Davenport's "illegal and retaliatory interference with his judicial independence." Krafsur's letter advised OSC that he considered Davenport's actions to be "constructive and involuntary adverse employment actions" and that SSA

3

had not advised him of his appeal rights to the Merit Systems Protection Board ("MSPB") as required by the CSRA. Neither OSC nor SSA responded to Krafsur's letter and have "stonewalled" his complaints.

In May, 2011, Davenport "disparaged" plaintiff's work performance to Region Four supervisors and "threatened" to deny the plaintiff non-emergency leave if Krafsur did not meet performance "benchmarks." Davenport has continued to retaliate against Krafsur by "insisting" that he present leave requests personally and "threatening" Krafsur with disciplinary action if "he requests or takes leave without meeting" performance benchmarks which were imposed on plaintiff but not other ALJs.

Retaliation against plaintiff has continued since the filing of the initial complaint. In July, 2011, the "defendants" altered a leave request slip submitted by Krafsur while Davenport was out of the office on vacation. The leave request was altered "by a co-conspirator in the retaliation cabal" to reflect that Krafsur had requested two hours of leave on July 14, 2011, instead of eighteen hours of leave for July 14 - 18, 2011. As a result, Krafsur was again declared AWOL and one day's pay deducted from his next paycheck. When Krafsur advised Davenport after Davenport returned from his vacation that he had called the Kingsport SSA office on July 18, Davenport accused him of being a "liar." Krafsur submitted a duplicate leave request at Davenport's insistence, which Davenport then rejected. Davenport subsequently sent plaintiff two letters demanding that Krafsur and Davenport discuss the July leave situation as if the prior discussion and duplicate leave request had never occurred. Krafsur requested that the Inspector General investigate the illegal alteration of the leave request by letter dated August 23, 2011.

In further retaliation, Davenport then misrepresented the July leave situation to Region Four

supervisors. As a result, Regional Chief ALJ Ollie Garmon ("Garmon") issued a written reprimand to Krafsur. Davenport "withheld" from his report to Region Four supervisors that the interim HOCALJ had approved Krafsur's request for leave during Davenport's absence on vacation, that an SSA employee in the Kingsport office altered the request, that Krafsur and Davenport had discussed the July leave report in detail when Krafsur returned to the office, and that Davenport had insisted that Krafsur submit a duplicate leave request. SSA later reimbursed the plaintiff's AWOL pay deduction.

Krafsur has suffered further "retaliation" since the filing of his Amended and Supplemental Complaint. In March, 2012, Krafsur was notified by Garmon that he would be investigating Krafsur's disability hearing procedures and conduct. On or about April 12, 2012, Garmon came to Kingsport and "interrogated" Krafsur for approximately 6.5 hours regarding several of his 2011 disability decisions. The questioning was an effort by SSA to harass and intimidate Krafsur and "discourage him from continuing to pursue this federal court action." Garmon instructed Krafsur to refrain from discussing topics involving the SSA.

On May 10, 2012, Davenport placed Krafsur on paid administrative leave and began reassigning Krafsur's disability cases to other ALJs. Krafsur was ordered to turn over all case files. When Krafsur telephoned Garmon later on May 10, Garmon confirmed that Krafsur had to return his files to the Kingsport office. Krafsur did as directed. During a telephone conference, Garmon directed Krafsur to clean out his office, turn in his government identification and certification documents, and to remain at his residence until further notice. Defendants' actions effectively removed Krafsur from his ALJ position without affording him any administrative civil service remedies.

5

Krafsur seeks injunctive relief, compensatory and punitive damages against Davenport, and compensatory damages against SSA "not to exceed $10,000.00."

### III. Standard of Review

#### A. Rule 12(b)(1)

Dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(1) where the court lacks subject matter jurisdiction over a plaintiff's claim. Fed. R. Civ. P. 12(b)(1). If a Rule 12(b)(1) motion challenges the court's subject matter jurisdiction based on the sufficiency of the pleadings' allegations, the motion is a facial attack. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). In reviewing a Rule 12(b)(1) facial attack, the court must accept all material allegations as true and construe them in a light most favorable to the non-moving party. *Id*. The defendants here raise a facial challenge to the Second Amended and Supplemental Complaint.

#### B. Rule 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 1949 (citing *Twombly*, 550 U.S. at 556). Furthermore, the plaintiff must provide in the claim "more than an unadorned, the – defendant– unlawfully– harmed– me accusation." *Id*. (citing *Twombly*, 550 U.S. at 555).

#### IV. Analysis and Discussion

As noted above, defendants essentially argue two broad bases in support of their motion to dismiss: (1) Sovereign immunity, and (2) preemption by the CSRA.

**A.     Sovereign Immunity**

"It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *Munaco v. United States*, 522 F.3d 651, 652-53 (6th Cir. 2008) (quoting *United States v. Mitchell*, 463 U.S. 206, 212 (1983)). In other words, "the United States cannot be sued at all without the consent of Congress." *Block v. N.D. ex. rel Bd. of Univ. and Sch. Lands*, 461 U.S. 273, 287 (1983). Sovereign immunity "extends to the agencies of the United States" or "federal officers [acting] in their official capacities." *Whittle v. United States*, 7 F.3d 1259, 1262 (6th Cir. 1993); *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994). The plaintiff has the burden of proving jurisdiction in order to survive a motion to dismiss premised on lack of jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). A waiver of sovereign immunity may not be implied and exists only when Congress has expressly waived immunity by statute. *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33 (1992).

Although the Second Amended and Supplemental Complaint is a somewhat rambling, often repetitious, 24-page document, making it difficult to discern the exact contours of plaintiff's claims, the plaintiff characterizes his claim here as "a *Bivens* claim against defendant Davenport because his attempted interference with the plaintiff's judicial independence and his subsequent pattern and practice of retaliation have been committed under color of federal law," [Doc. 26, ¶ 21]. In his memorandum in opposition to the motion to dismiss, plaintiff further characterizes his claims against SSA and Davenport in his official capacity as claims premised on Krafsur's "federal statutory right

7

of quasi-judicial decisional independence" created by the Social Security Act and the Administrative Procedures Act.

### 1. *Bivens*-Claims Against SSA and Davenport in his Official Capacity

The defendants first assert that plaintiff may not bring a *Bivens* action against the SSA or Davenport in his official capacity, citing *F.D.I.C. v. Meyer*, 510 U.S. 471, 486 (1994) and *Salt Lick Bancorp v. F.D.I.C.*, 187 Fed. App'x 428 (6th Cir. 2006). In his response, plaintiff apparently concedes as much, acknowledging that his *Bivens* claim is only against Davenport individually. In any event, defendants are correct. To the extent Krafsur is asserting *Bivens*-type claims against SSA, a federal agency, or Davenport in his official capacity, these claims are DISMISSED because SSA and Davenport are immune from suit and the Court lacks jurisdiction.

### 2. Waiver of Sovereign Immunity?

As noted above, the plaintiff must demonstrate that sovereign immunity has been waived; otherwise, the plaintiff's claims must be dismissed for lack of subject matter jurisdiction. *Reetz v. United States*, 224 F.3d 794, 795 (6th Cir. 2000). Plaintiff identifies two federal statutes in his complaint which he argues waive sovereign immunity--the Administrative Procedure Act ("APA"), 5 U.S.C. § 702 *et seq.* and the Tucker Act, 28 U.S.C. § 1346. The APA, he claims, "waives the sovereign immunity of federal agencies, including the Social Security Administration[,] for a federal civil action based on federal statutes which seek equitable and injunctive relief." The Tucker Act, he alleges, "waives the sovereign immunity of the United States for civil actions for non-tort unliquidated damages based on federal statutes . . ." [Doc. 26, ¶ 2]. Neither of these federal statutes, responds the defendants, constitute an express waiver of sovereign immunity for plaintiff's claims against SSA or Davenport in his official capacity.

The APA provides, in part:

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. . . .

5 U.S.C. § 702. The plaintiff, however, misconstrues the relevant provisions of the APA and his reliance on the Sixth Circuit's decision in *Toledo v. Jackson*, 485 F.3d 836 (6th Cir. 2007) is misplaced. Contrary to plaintiff's apparent assertion, "the APA does not afford an implied grant of subject-matter jurisdiction permitting federal judicial review of agency action." *Califano v. Sanders*, 430 U.S. 99, 107 (1977); *Chelsea Comm. Hosp. v. Michigan Blue Cross Ass'n.*, 630 F.2d 1131, 1133 (6th Cir. 1980) (holding that the "APA is not an independent basis for jurisdiction."). While § 702 does not vest subject matter jurisdiction in the court, the APA may operate as a waiver of the defense of sovereign immunity for non-monetary relief under 28 U.S.C. § 1331, federal question jurisdiction. *Leonard v. Orr*, 590 F.Supp. 474, 477 (S. D. Ohio 1984). However, by its terms, the APA authorizes challenges only to "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704; *Beamon v. Brown*, 125 F.3d 965, 967 (6th Cir. 1997) ("Although the APA provides a broad waiver of sovereign immunity . . . the waiver is limited . . . . [U]nder the APA, a federal district court may only review '[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court.'"). Such statutory waivers of sovereign immunity are "strictly construed in favor of the United States." *Reed v. Reno*, 146 F.3d 392, 398 (6th Cir. 1998).

The Tucker Act, 28 U.S.C. § 1491, contains a limited waiver of sovereign immunity for claims against the United States "founded either upon the Constitution, or any act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The United States Court of Federal Claims has jurisdiction over such claims. *Id*. The so-called "little" Tucker Act, 28 U.S.C. § 1346(a)(2), grants to federal district courts concurrent jurisdiction to hear these claims for amounts not exceeding $10,000.

The defendants argue that there has been no waiver of sovereign immunity by the APA for Krafsur's claims for equitable relief and damages against SSA and Davenport in his official capacity. Defendants correctly argue that § 702 of the APA does not independently confer subject matter jurisdiction on the court. They furthermore argue that where a plaintiff alleges that an agency has taken unlawful personnel actions, the CSRA precludes jurisdiction under the APA or the Tucker Act.

The plaintiff's rambling response does not make a coherent argument for subject matter jurisdiction. He largely relies on *Toledo v. Jackson* and *Nash v. Califano*, 613 F.2d 10 (2d Cir. 1980) ("*Nash I*") to provide subject matter jurisdiction. He misreads both cases. Neither deals with the precise question before the Court. In *Toledo v. Jackson*, employees brought an action against the Secretary of the Department of Housing and Urban Development alleging breach of a collective bargaining agreement. The Sixth Circuit, affirming the district court's finding of lack of subject matter jurisdiction, noted that the plaintiffs had "not identified an applicable waiver of sovereign immunity--by, say, invoking the Administrative Procedure Act, 5 U.S.C. § 702." 485 F.3d at 840. The case does not hold, as plaintiff appears to assert, however, that the "Sixth Circuit

10

Court of Appeals has urged federal employees who file federal court actions for injunctive relief against their federal agency-employer to utilize the waiver of sovereign immunity provisions" of the APA or that the APA in fact waives sovereign immunity for such claims, [Doc. 29 at 4].

Likewise, plaintiff's reading of *Nash v. Califano* is off the mark. In *Nash*, the Second Circuit considered the question of whether an ALJ, asserting a statutory right to decisional independence, had standing to bring suit for "an allegedly unauthorized regime of monitoring, evaluation and control" over the ALJ's decision making. 613 F.2d at 11. *Nash I*, as defendants assert, stands only for the narrow proposition that plaintiff had ***standing*** to pursue his claims. *See Nash v. Bowen*, 869 F.2d 675, 678 (2d Cir. 1989) (***Nash II***) (". . . we agree *Nash I* stands only for the narrow premise that plaintiff has standing to pursue his claims . . . .").[1] Defendants have not challenged Krafsur's standing here and the Second Circuit's pronouncements shed little light on the question before the Court.

Despite plaintiff's obfuscation of the issue, the Court will examine whether the APA might provide subject matter jurisdiction to the Court for Krafsur's claims. It might. First of all, the Sixth Circuit has decided that the waiver of sovereign immunity in § 702 is not limited to cases brought under the APA but may extend to cases brought under other statutes. *United States v. City of Detroit*, 329 F.3d 515 (6th Cir. 2003). In that case, an *en banc* court held that § 702, providing for suits against the government for relief "other than money damages" serves as a waiver of governmental immunity with respect to non-monetary claims, *id.* at 520-521, unless relief is forbidden by another statute, *id.* at 521 (citing *Up State Fed. Credit Union v. Walker*, 198 F.3d 372,

---

[1] As the defendants point out, the district court entered judgment in favor of defendants and dismissed the plaintiff ALJ's claim and the Second Circuit affirmed. *Nash II*, 869 F.2d at 676-77. Because the district court found for the agency, the Second Circuit expressly declined to decide whether the APA conferred jurisdiction in the case. *Id.* at 678.

11

375 (2d Cir. 1999) (describing § 702 as a "general waiver" but noting that relief is forbidden if another statute forbids it)). As a result, the APA waives sovereign immunity for an action stating a claim against the United States or its officers or employees and seeking relief other than money damages without concern for whether the case involves "agency action" or "final agency action." *Renteria-Villegas v. Metro. Gov't of Nashville and Davidson Co.*, 2011 WL 4048523, *8 (M.D. Tenn. Sept., 12, 2011). *See also Snyder Computer Systems Inc., v. LaHood*, 2010 WL 3167851, *3 (S.D. Ohio August 10, 2010); *Muniz-Muniz v. United States Border Patrol*, 2012 WL 5197250 (N.D. Ohio October 19, 2012). Thus, the APA may provide a waiver of immunity for Krafsur's claim for injunctive and equitable relief unless another statute precludes judicial review. 5 U.S.C. § 701(a)(1).

Likewise, the Little Tucker Act may provide jurisdiction for Krafsur's monetary claim against SSA. The defendants argue otherwise, however, asserting that the language of the Act only extends concurrent jurisdiction to district courts for contract cases, if the amount sought is less than $10,000, citing *Auction Co. of America v. F.D.I.C.*, 132 F.3d 746, 749 (D.C. Cir. 1997). The defendants misread both the District of Columbia Circuit's holding and the plain language of the statute. While the statute clearly confers concurrent jurisdiction on district courts and the Court of Federal Claims for contract cases if the amount sought is less than $10,000, it does not limit coverage of the Act to contract disputes. The Tucker Act, by its plain terms, governs non-tort claims against the United States based on "the Constitution, *or* any act of Congress, *or* any regulation of an executive department, *or* upon any express or implied contract with the United States, *or* for liquidated or unliquidated damages in cases not sounding in tort . . ." 28 U.S.C. § 1346(a)(2) (emphasis added).

### B. Preemption by Civil Service Reform Act ("CSRA")

Thus, the APA may provide jurisdiction for Krafsur's demand for non-monetary injunctive and equitable relief and the Little Tucker Act for his monetary claim unless some federal statute forbids the relief sought. That is exactly what defendants contend. They specifically allege that the CSRA precludes jurisdiction under the APA and Tucker Act because the basis for Krafsur's claims is alleged wrongful personnel actions for which he has a remedy under the CSRA. Plaintiff does not argue that Krafsur is not subject to, or that "personnel actions generally" are not within the scope of, the CSRA's coverage, but he does argue that the specific actions taken by the defendants and complained of by Krafsur are outside the scope of the protection afforded by the CSRA and that this action is not precluded by the CSRA.

The holdings of the United States Supreme Court in *United States v. Fausto*, 484 U.S. 439 (1998) and of the Sixth Circuit in *Fligiel v. Samson*, 440 F.3d 747 (6th Cir. 2006) *cert. denied*, 549 U.S. 1111 (2007) guide and control the Court's analysis here. In *Fausto*, the Supreme Court considered whether an administrative officer in the Department of the Interior Fish and Wildlife Service had the right to bring an action in the Federal Court of Claims challenging his removal from his position and seeking back pay under the CSRA (codified and amended in various sections of Title 5 of the United States Code). Fausto had sought review of his removal with the MSPB which dismissed his appeal on the grounds that "a nonpreference eligible in the excepted service has no right to appeal to the MSPB." *Id.* at 442. In other words, the Claims Court dismissed Fausto's complaint on the grounds that, although it left Fausto with no available remedy in the federal courts, the CSRA provides the only mechanism for a federal employee to challenge his termination.

The Court of Appeals reversed, *Fausto v. United States*, 783 F.2d 1020 (Fed. Cir. 1986) and the Supreme Court reversed the Court of Appeals. The Supreme Court found that in

enacting the CSRA Congress had created an elaborate new framework to replace the pre-CSRA "patchwork system" with "an integrated scheme of administrative and judicial review, designed to balance the legitimate interests of the various categories of federal employees with the needs of sound and efficient administration." *Id*. at 445. The new statute, the Court explained, "prescribes in great detail the protections and remedies applicable to such [adverse agency] action, including the availability of administrative and judicial review." *Id*. at 443. The precise question framed by the Supreme Court was "whether that withholding of remedy was meant to preclude judicial review for those employees, or rather merely to leave them free to pursue the remedies that had been available before enactment of the CSRA." *Id.* at 443-44.

The Court concluded that the CSRA "displays a clear congressional intent to deny the excluded employees the protections of Chapter 75--including judicial review--for personnel action covered by that chapter." *Id*. at 447. The Court regarded the statute as reflecting "a congressional judgment that those employees should not be able to demand judicial review for the type of personnel action covered by that chapter." *Id*. at 448.

In *Fligiel*, a physician employed by the Veterans Administration ("VA") sued the chief of staff at the VA medical center, the VA Deputy Undersecretary for Health, the Secretary of the VA and the Department of Veterans Affairs seeking damages based on her alleged wrongful transfer to another VA medical center. She also pursued a *Bivens* claim based on an alleged Fifth Amendment violation. The district court claimed jurisdiction pursuant to 28 U.S.C. § 1331, relying on the Veterans Benefit Act, 38 U.S.C. § 7461 *et seq*. ("VBA") and the APA. Relying largely on *Fausto*, the Sixth Circuit held that Fligiel could not gain judicial review in reliance on the APA or the VBA because Congress had precluded review by the passage of the CSRA. Under *Fausto*, the

14

Sixth Circuit said, "Where a comprehensive remedial scheme exists to address agency adverse actions, and Congress has clearly indicated that no judicial review is available, an individual may not choose other federal statutory avenues to obtain review." *Fligiel*, 440 F.3d at 752 (citing *Fausto*, 488 U.S. at 455).

The Sixth Circuit noted that it had previously relied on *Fausto* to deny judicial review to federal employees governed by the CSRA. *Id.* at 751. In *Leistiko v. Stone*, a lieutenant colonel in the Ohio National Guard who was medically disqualified from aviation service, alleged violations of his rights under the Constitution, the National Guard Technicians Act, the Rehabilitation Act and the Veterans Reemployment Rights Act. The Sixth Circuit held that "the logic of *Fausto* is that his removal from the technicians position is not subject to judicial review" and the "CSRA [ ] preclude[s] Leistiko's right of review under the APA." *Id.* at 753-54 (quoting *Leistiko v. Stone*, 134 F.3d 817, 818, 820 (6th Cir. 1998)). In *Harper v. Frank*, 985 F.2d 285 (6th Cir. 1993), a postal worker had no right to administrative or judicial review for her claims that the postal service did not follow its own regulations when it denied her a promotion. *Fligiel*, 440 F.3d at 754 n.4. *See also Anderson v. TVA*, 221 F.3d 1333 (Table), 2000 WL 924607, *1 (6th Cir. 2000) (the CSRA "preempts any action arising out of plaintiff's federal employment and precludes the district court's judicial review of such claims."); *Blade v. U.S. Bankruptcy Court*, 109 F.Supp.2d 872, 876 (S.D. Ohio 2008) ("[i]n light of the special relationship between the federal government and its employees, this Court holds that the presence of a deliberately crafted statutory employment system is a 'special factor' that precludes a *Bivens* remedy for federal employees." (citing *Moore v. Glickman*, 113 F.3d 988 (9th Cir. 1997)); *Giesken v. Department of Veterans Affairs*, 2007 WL 1287958 (E.D. Mich. May 2, 2007).

Every other federal circuit court of appeals to consider the question since *Fausto* has come to the same conclusion. *See Semper v. United States*, 694 F.3d 90 (Fed. Cir. 2012) (noting that *Fausto* did not limit its inquiry to employees of the executive branch, but to all "federal employees" and holding that plaintiff, a probation officer for the District Court of the Virgin Islands, who had no right of administrative or judicial review under the CSRA, was foreclosed from obtaining judicial review of his termination by an alternative mechanism, *i.e.*, through an action in the Court of Federal Claims under the Tucker Act); *Weber v. Dept. of Veterans Affairs*, 521 F.3d 1061 (9th Cir. 2008) (relying on *Fausto*, holding that physician's claim for back pay fell outside the scope of the APA and the comprehensive statutory scheme for the Veterans Health Administration did not permit judicial review of plaintiff's claim); *Dotson v. Griesa*, 398 F.3d 156 (2d Cir. 2005) (federal probation officer's *Bivens* action precluded by comprehensive remedial scheme of CSRA even though his grievances were excluded from coverage of CSRA); *Graham v. Ashcroft*, 358 F.3d 931 (D.C. Cir. 2004) (FBI agent's suit alleging the FBI failed to abide by its own internal procedures and regulations during a disciplinary proceeding against him barred by the exclusive remedy of the CSRA); *Pathak v. Dept. of Veterans Affairs*, 274 F.3d 28 (1st Cir. 2001) (review of a seven day suspension of a physician employed by Department of Veterans Affairs precluded because the CSRA does not provide judicial review of plaintiff's adverse personnel action); *Ayrault v. Pena*, 60 F.3d 346 (7th Cir. 1995) (CSRA precluded judicial review in wrongful termination action brought by student trainee); *Stephens v. Dept. of Health and Human Services*, 901 F.2d 1571 (11th Cir. 1990) ("*Fausto*, [ ] emphatically and conclusively established the preemptive nature of the CSRA."); *Yokum v. United States Postal Service*, 877 F.2d 276 (4th Cir. 1989) ("We agree, then, that '[u]nder *Fausto any* employee, including one in the postal service, who is not included in the provisions of

Chapter 75 was intended by Congress not to have the right to judicial review of his dismissal," notwithstanding any "statutory or non-statutory" procedural protection which postal employees "previously may have enjoyed."); *Witzkoske v. United States Postal Service*, 848 F.2d 70 (5th Cir. 1988) ("The clear holding of *Fausto* is that employees excluded from the coverage of Chapter 75 are not entitled to judicial review of adverse personnel decisions.").

Based on the clear weight of authority, the Court holds that it lacks subject matter jurisdiction under either the APA or the Tucker Act because this action, arising out of Krafsur's federal employment, is precluded by the "comprehensive remedial scheme" established by the CSRA. It is beyond dispute that Krafsur is subject to the CSRA. ALJs employed by SSA are clearly civil service[2] employees. *See Nash I*, 613 F.2d at 12.

In an effort to avoid the preclusive effect of the CSRA, Krafsur advances several arguments. First of all, Krafsur argues that the CSRA affords him protection only for (1) a removal, (2) a suspension, (3) a reduction in grade, (4) a reduction in pay, and (5) a furlough of 30 days or less, but does not afford him protection for the actions taken by defendants such as interference with his statutorily created right of decisional judicial independence, declaring him AWOL or deducting unapproved leave time from his pay check. In other words, he argues that the CSRA does not permit him to seek relief from the MSPB for some of the agency actions of which he complains. True enough, but of no consequence. As the cases make abundantly clear, Krafsur is limited to the remedies afforded by the CSRA; if Congress has provided for none under the Act, none exist. *Fausto*, 484 U.S. 439, 448-49 ("The absence of provision for these employees to obtain judicial

---

[2] The term "civil service" is expressly defined, for purposes of all of Title 5, to include positions in "the executive, judicial, and legislative branches" of the federal government. 5 U.S.C. § 2101.

17

review is not an uninformative consequence of the limited scope of the statute, but rather manifestation of a considered congressional judgment that they should not have statutory entitlement to review for adverse action . . ."); *Fligiel*, 440 F.3d at 752 ("The absence of a provision allowing judicial review of *Fausto*'s adverse personnel action in the CSRA was an indication that Congress did not intend employees to have such a right."). While Krafsur focuses on the question of whether defendants actions are of the type for which he is afforded a remedy under CSRA, the proper focus is on whether the claims arise out of his federal employment relationship with the United States. *See Anderson, supra*.

Secondly, Krafsur argues that the failure of SSA to give "plaintiff the adverse personnel action notices required by 5 CFR § 1201.21 to advise him that he has the right to appeal to the MSPB" and the fact that OSC has not "complied with the 15-day and 90-day notice provisions and the investigation obligations" imposed by 5 U.S.C. § 1214 also show that the complained of actions are "outside the scope" of the CSRA, [Doc. 29 at 13, 14 n.8]. The Court disagrees. Complaints about SSA's failure to comply with the procedural requirements of the CSRA may be made but only in the correct forum, the agency itself, the MSPB, the Court of Claims, not in this district court. Furthermore, plaintiff's extensive citation of MSPB opinions simply underscores that the MSPB is the correct forum. Indeed, one of the decisions Krafsur cites confirms MSPB jurisdiction over a constructive removal claim based on interference with an ALJ's decisional judicial independence. *See Doyle v. Dept. of Health and Human Services*, 29 M.S.P.R. 170, 174 (1985). Finally, Krafsur appears to argue that the result is somehow different because he is asserting a federal statutory right of quasi-judicial independence, that he asserts a constitutional claim for violation of his First and Fifth Amendment rights, and that he is asserting a *Bivens*-type claim. He

18

is mistaken. *See, e.g., Leistiko*, 134 F.3d at 818, 820 (under *Fausto*, plaintiff was precluded from district court review of his asserted claims arising both under the Constitution and various statutes and holding that "[t]he reasoning of *Fausto* . . . does not depend on whether constitutional violations are alleged;" *Fligiel*, 440 F.3d at 749 (plaintiff's statutory and *Bivens* claims precluded). *See also Elgin v. Dept. of Treasury*, __ U.S. __, 132 S.Ct. 2126 (2012) (holding that CSRA provided exclusive avenue to judicial review over constitutional claims). Thus, all of Krafsur's claims, whether against the SSA, Davenport in his official capacity or Davenport individually, whether asserted under statute, the Constitution or otherwise, are precluded by the operation of the CSRA.

### C. Intentional Infliction of Emotional Distress

Finally, the defendants argue that, to the extent plaintiff asserts a claim for intentional infliction of emotional distress, it is also preempted by the CSRA or, alternatively, barred by the Federal Tort Claims Act because Davenport's acts were within the scope of his federal employment and plaintiff has failed to plead exhaustion of available remedies. Defendants cite to ¶ 41 of plaintiff's second amended and supplemental complaint for what appears to be the assertion of a claim for intentional infliction of emotional distress. Krafsur, in his response, does not respond to the defendants' assertion and does not clarify whether he is in fact attempting to make a claim for intentional infliction of emotional distress. Despite the language used in ¶ 41 of the Second Amended and Supplemental Complaint, it does not appear to the Court that Krafsur is, in fact, asserting such claim. To the extent he does, however, the government is correct that such a claim is preempted by the CSRA which not only preempts Krafsur's federal claims under the Constitution, statute and/or regulation but also preempts state law claims. *See Rollins v. Marsh*, 937 F.2d 134, 140 (5th Cir. 1991) (finding that CSRA preempts state law claims).

## V. Conclusion

For the reasons set forth herein, the defendants' motion to dismiss, [Doc. 27], will be GRANTED and plaintiff's Second Amended and Supplemental Complaint will be DISMISSED.

So ordered.

ENTER:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE
